UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TRAVIS COLEMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>SNOHOMISH COUNTY, *et al.*,<br><br>    Defendants. | Case No. C18-151-JCC-JPD<br><br>REPORT AND RECOMMENDATION |

## I.    INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Travis Coleman is a former inmate of the Snohomish County Jail in Everett, Washington. He is proceeding *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action against Snohomish County, and Snohomish County Jail employees Debbie Bellinger, RN and Stuart Andrews, M.D., who treated plaintiff over the course of his incarceration as a pretrial detainee. Dkt. 8. Specifically, plaintiff alleges that the defendants denied him medically necessary prescription medication and adequate accommodations in his cell for preexisting back and knee injuries, violating his federal constitutional rights and causing him extreme pain and suffering. Dkt. 6 at 3. He further claims that defendant Nurse Bellinger provided only "flippant

replies to grievances." *Id*.

Defendant Snohomish County moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), Dkt. 25, and defendants Dr. Andrews and Ms. Bellinger move for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. 39.[1] To date, plaintiff has failed to file opposition to either dispositive motion, despite the fact that the Court granted plaintiff an extension of time to respond following his release from custody in July. Dkt. 47. Having considered defendants' dispositive motions, plaintiff's lack of opposition, defendants' replies, the governing law, and the balance of the record, the Court RECOMMENDS that defendants' dispositive motions, Dkts. 25, 39, be GRANTED, and plaintiff's claims be DISMISSED with prejudice.

## II.   DISCUSSION

### A.   Background and Plaintiff's Allegations

Plaintiff was incarcerated at the Snohomish County Jail as a pretrial detainee from November 28, 2017 to February 15, 2018. He received medical care from the defendants throughout this time. Dkt. 41 (Andrews Decl.) at ¶ 2.[2] On November 28, 2017, plaintiff was seen in the medical unit by jail medical staff for intake, and reported that he had chronic pain due to various prior ailments, including a right knee meniscus repair in 2017 and a cervical spine fusion in 2014. Dkt. 40, Ex. B (chart notes). Plaintiff reported that his outside primary care provider had prescribed Oxycodone, Fentanyl patches, Neurontin, and Effexor for his pain, which he had previously obtained at the Walmart pharmacy in Everett. *Id*. He asked when he

---

[1] Defendants Dr. Andrews and Ms. Bellinger further move to join Snohomish County's opposition to plaintiff's motion for appointment of counsel, asserting that plaintiff "has not met, and cannot meet, the standard." Dkt. 37. As the Court has already denied plaintiff's motion seeking appointment of counsel, Dkt. 47, this motion for joinder is DENIED as MOOT.

[2] On February 14, 2018, plaintiff was convicted of first degree criminal trespass and harassment, and he was released from Snohomish County Jail on February 15, 2018.

would receive these medications in jail. *Id.* Plaintiff's prior pharmacy records were obtained from the Walmart Pharmacy on November 29, 2017, to verify plaintiff's report. Dkt. 41 (Andrews Decl.) at ¶ 3. Thus, defendants promptly investigated plaintiff's request for pain medication.

Chart notes reflect that between his intake and discharge from the jail, plaintiff was evaluated and treated by jail staff, including Dr. Andrews, on numerous occasions for pain, nausea, or other issues. *Id*. at ¶¶ 4-9; Dkt. 40, Ex. B (reflecting medical evaluations or treatments provided on November 29; December 1,5, 7, 15, 16, 19, 28; January 1, 2, 3, 10, 19, 29). During his visits with the medical team members, plaintiff repeatedly requested the same medications he had been prescribed by his outside provider or other accommodations such as an additional blanket and mattress, but the defendants provided him non-narcotic pain medication instead.

In his complaint, plaintiff alleges that the defendants denied him medically necessary prescription medication and adequate accommodations in his cell for preexisting back and knee injuries, violating his federal constitutional rights and causing him extreme pain and suffering. Dkt. 6 at 3. Specifically, plaintiff asserts that he has had a cervical spine fusion due to prior injuries, and was denied adequate medication in jail for "the horrible pain I am constantly in." *Id*. He argues that although he provided the defendants with "my doctor info/pharmacy to medical staff at least 5 times, they kept asking for the same information, using it as an excuse why they were not giving my meds. I gave it at booking, on kites, on paper, verbally." *Id*. For example, although "they did an x-ray of my neck, and they gave no other medical help, no additional meds, only Gabapentin and Effexor which I was already on. I did not even take the Effexor because they messed up the dose and it was giving me migraines and making me vomit. It took them almost a month to change it to Cymbalta instead." *Id*. Plaintiff asserts that his

REPORT AND RECOMMENDATION
PAGE - 3

1  request for a wheelchair was also denied by jail staff, and he was put in "a standard observation
2  cell, with a horrible, flat mat, and suffered greatly for months as a direct result." *Id.*  Finally, he
3  claims that defendant Nurse Bellinger provided only "flippant replies to grievances." *Id.*  He
4  requests $400,000 in damages. *Id.* at 4.

5              B.  Snohomish County's Motion for Judgment on the Pleadings is Granted

6              Defendant Snohomish County moves for judgment on the pleadings pursuant to Fed. R.
7  Civ. P. 12(c).  Specifically, the County asserts that plaintiff appears to allege medical negligence
8  or deliberate indifference to his serious medical needs, but plaintiff has not alleged a pattern,
9  practice, or custom giving rise to municipal liability under 42 U.S.C. § 1983.  Dkt. 25 at 2.  The
10 County argues that without such an allegation, plaintiff's complaint cannot establish a theory of
11 municipal liability, because allegations of random acts or single instances of misconduct are
12 insufficient to establish a municipal custom. *Id.* at 3.  The County asserts that here, plaintiff has
13 failed to make any statements whatsoever regarding the existence of a policy or custom giving
14 rise to municipal liability, and his allegations relate to specific instances of alleged misconduct
15 regarding his own medical needs. *Id.* at 3-4.

16             Any party may bring a motion for judgment on the pleadings "[a]fter the pleadings are
17 closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c).  The standard of
18 review applied to a motion for judgment on the pleadings is essentially the same as that which is
19 applicable to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Ludahl v. Seaview*
20 *Boat Yard, Inc.,* 869 F.Supp. 825, 826 (W.D. Wash. 1994); *Qwest Communications Corp. v. City*
21 *of Berkeley,* 208 F.R.D. 288, 291 (N. D. Cal. 2002) (Fed. R. Civ. P. 12(b)(6) and 12(c) are
22 substantially identical).  All allegations of material fact in the non-moving party's pleadings are
23 taken as true and "construed in the light most favorable to that party," and all inferences to be

REPORT AND RECOMMENDATION
PAGE - 4

drawn from those facts also are construed in favor of the party opposing the motion, as are all "[u]ncontested allegations to which the [moving] party had an opportunity to respond." *General Conference Corp. of Seventh–Day Adventists v. Seventh–Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989); *Fajardo v. County of Los Angeles,* 179 F.3d 698, 699 (9th Cir. 1999).

Dismissal of a complaint under Fed. R. Civ. P. 12(c) may be based upon either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990). While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) (internal citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Vague and mere "[c]onclusionary allegations, unsupported by facts" are thus insufficient to state a section 1983 claim. *Jones v. Comty. Dev. Agency,* 733 F.2d 646, 649 (9th Cir. 1984); *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992). Further, although the complaint is to be construed liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena,* 976 F.2d at 471. The Court should not dismiss the complaint, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Here, the County is correct that plaintiff's complaint does not contain sufficient factual allegations to state a claim against defendant Snohomish County. In order to set forth a claim against a municipality under 42 U.S.C. § 1983, a plaintiff must show that the defendant's

employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to, or violates, the plaintiff's civil rights; or that the entity ratified the unlawful conduct.  *See Monell v. Department of Social Servs.,* 436 U.S. 658, 690–91 (1978); *Larez v. City of Los Angeles,* 946 F.2d 630, 646–47 (9th Cir. 1991).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 59 (2011). "Under § 1983, local governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Id.* (*citing Monell,* 436 U.S. at 692).  Plaintiff has failed to plead any facts demonstrating that Snohomish County possesses a policy, practice, or custom that evidences its deliberate indifference to the health or safety of the inmates in its jails.  In addition, there are no facts showing that any of the defendants were so inadequately trained by Snohomish County as to create *respondeat superior* liability for the County.  As plaintiff has not alleged sufficient facts to give rise to municipal liability under 42 U.S.C. § 1983, Snohomish County's unopposed motion for judgment on the pleadings, Dkt. 25, is GRANTED.

   C. <u>Dr. Andrews and Nurse Bellinger's Motion for Summary Judgment is Granted</u>

    *1.* *Summary Judgment and § 1983 Standards*

  Summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it

"might affect the outcome of the suit under the governing law." *Id.*

When applying these standards, the Court must view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *See United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing evidence that negates an essential element of the nonmoving party's claim, or by establishing that the nonmoving party does not have enough evidence of an essential element to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment, who must go beyond the pleadings and affirmatively establish a genuine issue on the merits of the case. Fed. R. Civ. P. 56(e). The nonmovant must do more than simply deny the veracity of everything offered by the moving party or show a mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To avoid summary judgment, the nonmoving party must, in the words of Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party's failure of proof concerning an essential element of its case necessarily "renders all other facts immaterial," creating no genuine issue of fact and thereby entitling the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must set forth the specific factual bases upon which he claims each defendant is liable. *Aldabe v. Aldabe*, 606 F.2d 1089, 1092 (9th Cir. 1980). Specifically, a plaintiff must show (1) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) that the violation was proximately caused by a person acting under color of state or federal law. *See Crumpton v.*

REPORT AND RECOMMENDATION
PAGE - 7

*Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused or personally participated in causing the constitutional or statutory violations alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

> *2. Legal Standard for Deliberate Indifference to Serious Medical Needs for Pretrial Detainees Following* Gordon v. County of Orange

The Eighth Amendment's prohibition against cruel and unusual punishment/deliberate indifference to serious medical needs does not directly apply to pretrial detainees, but only applies after conviction and sentence. *See Graham v. Connor,* 490 U.S. 386, 392 n. 6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). However, the Supreme Court has held that "[p]retrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, while the Eighth Amendment proscribes cruel and unusual punishment for convicted inmates, the Due Process Clause of the Fourteenth Amendment proscribes any punishment of pretrial detainees. *See Redman v. County of San Diego,* 942 F.2d 1435, 1441 n.7 (9th Cir. 1991).

Deliberate indifference to a prisoner's medical needs is defined by the Ninth Circuit Court of Appeals as the "unnecessary and wanton infliction of pain" by ignoring a prisoner's serious medical need. *Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994). Indifference may be manifested by a response to the prisoner's need, by the intentional denying or delaying access to medical care, or the intentional interference with treatment once prescribed. *Id.* Where a prisoner is alleging that delay of medical treatment resulted from deliberate indifference, the prisoner must also show that the delay caused further injury. *See McGuckin v. Smith*, 974 F.2d

1050, 1060 (9th Cir. 1991). Until recently, the Ninth Circuit held that the same deliberate indifference standard applies to claims that correction facility officials failed to address the medical needs of pretrial detainees as to convicted prisoners, *i.e.,* the court would construe plaintiff's deliberate indifference claims as Fourteenth Amendment due process claims, subject to Eighth Amendment standards. *See Lolli v. Cty. of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003).

In April 2018, the Ninth Circuit published its opinion in *Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018), which modified the standard for claims of deliberate indifference to serious medical needs brought by pretrial detainees. "[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon*, 888 F.3d at 1124-25 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). Thus, "the plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* (quoting *Castro*, 833 F.3d at 1071). In other words, defendants can be held liable for deliberate indifference if their actions were objectively deliberately indifference—their subjective intent is no longer material. *See Gordon*, 888 F.3d 1124-25. *Compare Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (requiring pretrial detainee alleging deliberate indifference to medical needs to provide that government officials were subjectively aware of a substantial risk of serious harm and yet took no action).

The Ninth Circuit summarized the elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment as follows:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take

reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Id.* at 1071 (quoting *Kingsley*, 135 S.Ct. at 2473; *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ).

*Gordon*, 888 F.3d at 1125.

### 3. Dr. Andrews

Dr. Andrews first evaluated plaintiff during a provider sick call on December 15, 2017. Dkt. 41 (Andrews Decl.) at ¶ 4. Plaintiff's physical evaluation was normal, and he reviewed a December 7, 2017 cervical spine x-ray, which showed no fracture, subluxation, or hardware disruption. Dr. Andrews concluded that plaintiff was "demonstrating subjective musculoskeletal complaints with minimal objective findings." *Id.* Plaintiff was informed by Dr. Andrews that non-formulary narcotic pain medications are not routinely given in the jail, absent extraordinary circumstances, and that his complaints of pain did not warrant treatment with narcotic pain medications. *Id*. Dr. Andrews told plaintiff that he could achieve pain relief through medications alternative to the narcotics plaintiff was requesting, and Dr. Andrews ordered Effexor. *Id.* Dr. Andrews' subsequent review of plaintiff's medical records from his outside primary care provider from Molina Medical, as well as Harborview Medical Center and Orthopedics Northwest, also did not reflect history that "warranted treatment with narcotic pain medication" in Dr. Andrews' judgment. *Id*. at ¶ 5.

On January 3, plaintiff had stopped taking the Effexor because it made him nauseous, and Dr. Andrews visited him in his cell. After Dr. Andrews explained that narcotic pain medication was not medically necessary, plaintiff voiced his willingness to start the Effexor again. He also

ordered a test to check plaintiff's thyroid, the results of which were normal. *Id*. at ¶ 6. However, after the Effexor was reinstated, plaintiff once against refused it, and it was discontinued on January 12, 2018. *Id*. at ¶ 7. On January 19, Dr. Andrews prescribed Cymbalta for plaintiff's various pain complaints. *Id*. at ¶ 8. On January 29, Dr. Andrews saw plaintiff in a provider sick call for various complaints, including plaintiff being upset that an extra blanket or mattress had not been authorized for him. Dr. Andrews explained that the medical team determined they were not medically necessary, and every inmate wanted these items and so the criteria must be fair and uniform. *Id*. at ¶ 9. Dr. Andrews did increase the Cymbalta prescription for plaintiff's reported neuropathy/radiculopathy, and advised plaintiff that they could increase his Neurontin later if needed. *Id.* Dr. Andrews opined that during plaintiff's incarceration until his release from Snohomish County Jail in February 2018, plaintiff's chronic pain complaints did not warrant treatment with narcotic pain medication. *Id*. at ¶¶ 10-11.

Plaintiff has failed to establish a genuine issue of material fact regarding the constitutionality of Dr. Andrews' conduct. Plaintiff failed to oppose defendants' summary judgment motion. As a result, plaintiff has not provided any evidence that Dr. Andrews' determination that plaintiff's chronic pain complaints did not warrant treatment with narcotic pain medication put the plaintiff at substantial risk of suffering serious harm, and Dr. Andrews did not take reasonable measures to abate that risk when a reasonable physician in his position would have done so. *See Gordon*, 888 F.3d at 1125. Rather, it appears to the Court that Dr. Andrews repeatedly acknowledged plaintiff's request for certain narcotic medications; obtained and reviewed plaintiff's medical records from his outside providers to understand plaintiff's medical and pharmacological history; frequently treated plaintiff to address his complaints of chronic pain, including offering plaintiff alternative medications as needed when plaintiff refused

REPORT AND RECOMMENDATION
PAGE - 11

to take his prescribed medication on several occasions; and performed regular physical exams of plaintiff.  Without more, plaintiff's disagreement with his doctor's methodology or course of treatment is not enough to state a claim of deliberate indifference.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Shields v. Kunkel*, 442 F.2d 409, 410 (9th Cir. 1971).

As plaintiff has declined to present any evidence or argument to the contrary, defendant Dr. Andrews' version of the facts are accepted as undisputed.  Accordingly, plaintiff has failed to raise a genuine issue of material fact that defendant Dr. Andrews was deliberately indifferent to plaintiff's serious medical needs, and Dr. Andrews is entitled to summary judgment.

    *4.  Nurse Bellinger*

As noted above, plaintiff's sole claim with respect to Nurse Bellinger is that she "gave flippant replies to grievances."  Dkt. 6 at 3.  Nurse Bellinger is the Nursing Supervisor for the Snohomish County Jail, and as part of her duties she often responds to inmate grievances and kites related to medical services.  Dkt. 42 (Bellinger Decl.) at ¶¶ 1-2.

During plaintiff's incarceration in the Snohomish County Jail, Nurse Bellinger did not provide any medical care or treatment to him.  *Id*. at ¶ 3.  Rather, her involvement with plaintiff was limited to reviewing and responding to various medical kites and/or grievances that he filed while incarcerated.  *Id*.  Specifically, plaintiff sent several medical kites between December 7-13 complaining of pain, and stating that he was being denied his prescription medications.  *Id.* at ¶ 4.  In response to his kites, jail medical staff scheduled plaintiff to see Dr. Andrews on December 15, 2017.  *Id*.  In addition, plaintiff sent a medical kite reflecting his continued request for certain narcotic pain medication, including Oxycodone and Fentanyl, on January 1, 2018.  *Id.* at ¶ 5.  In response, medical staff tasked a "provider chart review" to ensure adequate review of the

medications plaintiff had been receiving at the jail (Effexor and Gabapentin), and informed plaintiff that Fentanyl is not provided at the jail. *Id.*

Plaintiff has failed to raise a genuine issue of material fact that through her treatment of his medical kites, defendant Nurse Bellinger acted with deliberate indifference to his serious medical needs. In other words, there is no evidence that her response to his kites put the plaintiff at substantial risk of suffering serious harm, and she did not take reasonable measures to abate that risk when a reasonable nurse in her position would have done so. *See Gordon*, 888 F.3d at 1125. As plaintiff has declined to present any evidence or argument to contradict Nurse Bellinger's version of events, or show that he suffered increased harm as a direct result of her conduct, the Court must accept her declaration as undisputed.

Accordingly, plaintiff has failed to show that the actions of Dr. Andrews or Nurse Bellinger in treating his condition or responding to his medical kites rose to the level of deliberate indifference. Plaintiff's constitutional claims against these two individual defendants are dismissed with prejudice. In light of this conclusion, the Court need not address defendants' alternative argument that the defendants are entitled to qualified immunity. *See* Dkt. 39 at 13-15.

IV.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that defendants' dispositive motions (Dkts. 25, 39) be GRANTED, defendant's motion for joinder (Dkt. 37) be DENIED as MOOT, and plaintiff's claims be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 9, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for

consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within fourteen (14) days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 16, 2018**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 19th day of October, 2018.

*James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge